UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
In re:                                                       :    Chapter 7
                                                             :
KOSSOFF PLLC,                                                :    Case No. 21-10699 (DSJ)
                                                             :
                      Debtor.                                :
------------------------------------------------------------ X
ALBERT TOGUT, Not Individually but Solely                    :
in His Capacity as Chapter 7 Trustee of the                  :
Estate of Kossoff PLLC,                                      :
                                                             :    Adv. Pro. No. 23-01080 (DSJ)
                      Plaintiff,                             :
                                                             :
              v.                                             :
                                                             :
BRUCE BARASKY,                                               :
                                                             :
                      Defendant.                             :
------------------------------------------------------------ X
```

## POST-TRIAL MEMORANDUM OF DECISION

**APPEARANCES:**

TOGUT, SEGAL & SEGAL
*Counsel for the Trustee Albert Togut, not individually but in his capacity as Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
By:    Neil Berger
       Jared C. Borriello
       Minta Nester
       Ronald Howard

LAW OFFICE OF CURTIS A. HEHN
*Counsel for Bruce Barasky*
1007 N. Orange St., 4th Floor
Wilmington, DE 19801
By:    Curtis A. Hehn (admitted *pro hac vice*)

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding was commenced on April 3, 2023 by Albert Togut, the

Chapter 7 trustee of the estate of the now defunct law firm Kossoff PLLC (Case No. No. 21-

10699-DSJ). Mr. Togut filed a complaint pursuant to 11 U.S.C. 547(b) against defendant Bruce

Barasky ("Mr. Barasky" or the "Defendant"), seeking to avoid a prepetition preferential transfer

of $210,000 that was made in connection with a real estate transaction involving a building

previously owned by Mr. Barasky.

Specifically, the Trustee seeks (1) to avoid the transfer of $210,000 from the Debtor to

Mr. Barasky as a preferential transfer pursuant to Section 547(b) of the Bankruptcy Code, 11

U.S.C. § 547(b), Compl. ¶¶ 35-47; (2) to alternatively avoid the transfer of $210,000 as a

fraudulent transfer pursuant to Section 548 of the Bankruptcy Code, 11 U.S.C. § 548, Compl. ¶¶

48-52; (3) to recover "an amount to be determined at trial that is not less than the total amount of

the [Funding Payment]," Compl. ¶ 56, contending it is an avoidable transfer pursuant to Section

550 of the Bankruptcy Code, 11 U.S.C. § 550, Compl. ¶¶ 53-56; and (4) to disallow any claims

filed by Mr. Barasky in the Chapter 7 case of Kossoff PLLC pursuant to Section 502(d) of the

Bankruptcy Code, 11 U.S.C. § 502(d), Compl. ¶¶ 57-71.

On May 7, 2025, the Court held trial in the case and heard argument by counsel for the

Trustee and Mr. Barasky. The Trustee submitted the direct testimony of Matthew R. Flynn, CPA,

CFF, CIRA and Mr. Flynn (with Court approval pursuant to FED. R. CIV. P. 43(a) as made

applicable by FED. R. BANKR. P. 9017) appeared remotely before the Court for cross-examination

testimony. The Trustee also introduced exhibits PX-1 through PX-23. Mr. Barasky called no

witnesses and introduced no exhibits, but, after a Court-imposed deadline had passed, he offered

his own sworn declaration, *see* Direct Testimony Declaration of Bruce Barasky ("Barasky

Decl.") [ECF No. 73-3], the first 10 paragraphs of which the Court admitted into the trial record.

Trial Tr. 19:20-25, May 7, 2025 [ECF No. 76]. After the trial, the Court received post-trial

submissions from Mr. Barasky [ECF No. 77] and the Trustee [ECF No. 78]. After considering

the evidence and other submissions, the arguments of counsel, and the record before the Court,

for the reasons set forth below, the Court determines that (1) the transfer of $210,000 to Mr.

Barasky is avoidable under Section 547(b) of the Bankruptcy Code, (2) Mr. Barasky is required

to pay the Trustee the amount of the transfer plus interest and costs pursuant to Section 550(a) of

the Bankruptcy Code, and (3) any claim of Mr. Barasky against the Debtor must be disallowed

pursuant to Section 502(a)-(j) of the Bankruptcy Code. Further, the Court rejects Mr. Barasky's

contention that the Trustee's claims impermissibly extended beyond his Complaint, which the

Trustee did not amend before trial other than by submitting a proposed joint pretrial order

describing the theories under which the Trustee sought relief. Reliance on such a pretrial order

was permissible and appropriate.

This Memorandum of Decision constitutes the Court's proposed findings of fact and

conclusions of law.[1]

---

[1]    Earlier in this case, the District Court denied Mr. Barasky's motion for withdrawal of the reference, and in the course of that decision determined that this Court as a non-Article III court lacks final adjudicative authority over Counts I (the Section 547(b) preference claim) and II (the Section 548 fraudulent transfer claim) of the Complaint. Because the Section 547(b) issue is the focal point of the trial and this decision, the Court follows the District Court's prior analysis and issues this Decision as proposed findings of fact and conclusions of law regarding Counts I and II. See *Togut v. Barasky (In re Kossoff PLLC)*, No. 23 CIV. 4132 (JPC), 2024 WL 1892432, at *3–5 (S.D.N.Y. Apr. 29, 2024) (citing *Stern v. Marshall*, 564 U.S. 462, 503 (2011)). The District Court "express[ed] no view as to the other two causes of action [Counts III and IV] in the Complaint." *Id.* at *3 n.2. Given that Count III (recovery of the preference claim pursuant to Section 550(a)) is closely intertwined with Sections 547 and 548, *see Miller v. Steinberg (In re Steinberg Enters. Inc.)*, 141 B.R. 587, 591 (Bankr. E.D. Pa. 1992) ("Section 547 identifies those transfers which may be avoided, while section 550 governs recoverability of transfers so avoided."), and no exception to the *Stern* doctrine is present, this Decision constitutes the Court's proposed findings of fact and conclusions of law as to Count III as well. Regarding Count IV (which seeks disallowance of Defendant's claims in the main *Kossoff* case pursuant to Section 502(d) notwithstanding that Mr. Barasky never filed a proof of claim), the Court "cannot enter a final judgment against a defendant that never filed a claim because the lawsuit cannot implicate the claims allowance process through [Section] 502(d)." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 455 (Bankr. S.D.N.Y. 2015). Since Defendant has not filed a proof of claim in the main *Kossoff* case, *see Barasky*, 2024 WL 1892432, at *4, the Court does not have "independent authority to decide whether to disallow a defendant's claim to the estate." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 54 (S.D.N.Y. 2013). Resolution of Count IV on a final basis would necessarily implicate resolution of Counts I – III on a final basis,

**BACKGROUND**

This Decision discusses only case background that is immediately pertinent to the

motion it resolves, while assuming familiarity with the broader background of the main *Kossoff*

*PLLC* bankruptcy case and with this adversary proceeding. In brief, creditors of Kossoff PLLC

commenced the main bankruptcy case by filing an involuntary Chapter 7 petition on April 13,

2021, when they discovered that substantial funds of theirs held by the Kossoff PLLC firm, a

now-defunct law firm specializing in real estate matters, were missing due to misappropriations

by Mitchell Kossoff, a now-disbarred attorney who was the principal of Debtor Kossoff PLLC.

Ultimately, on December 13, 2021, Mr. Kossoff pled guilty to criminal charges alleging that he

had stolen or misappropriated at least $14.5 million in client funds, and Mr. Kossoff is now

incarcerated in the New York State prison system. *See Togut v. Barasky (In re Kossoff PLLC)*,

No. 21-10699 (DSJ), 2024 WL 665913, at *1 (Bankr. S.D.N.Y. Feb. 16, 2024).

Early in the main bankruptcy case, the Court appointed the Trustee. *See* Case No. 21-

10699 (DSJ), ECF No. 15 (May 12, 2021). The Trustee has worked tirelessly seeking to recover

estate funds, including by bringing numerous actions attempting to recover funds to which the

bankruptcy estate may be entitled. This is one such case.

Mr. Barasky's unfortunate encounter with Mr. Kossoff occurred in connection with his

sale of a building he owned, located at 135 Reade Street, New York, New York (the "Property").

*See* Complaint Against Bruce Barasky ("Compl.") ¶ 34 [ECF No. 1]; Joint Pretrial Order

("JPTO") ¶ III.11 [ECF No. 65]. The Property was purchased by a client of the Debtor, 135

Reade St. LLC (the "Buyer"); the Debtor represented the Buyer in this transaction.  JPTO ¶¶

which the Court has no constitutional authority to do. Therefore, the Court enters this Decision as proposed
findings of fact and conclusions of law for Counts I – IV of the Complaint.

III.12, 14. There is no allegation or evidence that Mr. Kossoff or Kossoff PLLC had any

connection with Mr. Barasky other than their representation of the Buyer in the purchase of the

Property. In an initial purchase and sale agreement executed on January 17, 2020 between Mr.

Barasky and the Buyer, see PX-17, the Buyer agreed to pay Mr. Barasky $5.964 million as

consideration for the Property and to deposit $250,000 to the Kossoff PLLC firm by check or

wire transfer to the escrow agent. JPTO ¶¶ III.15-17. The agreed-upon deposit was paid by the

escrow agent into the Debtor's IOLA Account bearing account number ending in -9936,

maintained by JPMorgan Chase Bank, N.A. (the "Chase IOLA Account"). *Id.* ¶ III.18. The

parties to the sale later renegotiated the terms of the sale and agreed to reduce the purchase price

to $4.65 million; the new agreement required the Buyer pay an additional deposit of $210,000.

*Id.* ¶¶ III.19-20. The Buyer made the additional $210,000 payment on November 18, 2020 (the

"Funding Payment") into the Debtor's Chase IOLA Account to be held in trust. *Id.* ¶¶ III.21-22;

PX-2; PX-4; PX-19.

Mr. Kossoff has acknowledged that he used funds contained in his firm's IOLA account

for unauthorized personal purposes, and the evidence establishes that he did so with virtually all

of the $210,000 deposit in connection with the Buyer's purchase of the Property. On January 5,

2021, after the deposit was made and before the transaction with Mr. Barasky closed, statements

for the Chase IOLA Account show an ending balance of $5,484.62. *Id.* ¶ III.23; PX-6. This fact

establishes that Mr. Kossoff unlawfully diverted or misappropriated at least $204,000 of the

$210,000 deposit on the Barasky transaction. The terms of the purchase and sale agreement were

later amended on February 8, 2021, but that amendment did not change the requirement of the

escrow agent to hold the deposits on behalf of Mr. Barasky until the sale closed. JPTO ¶ III.26;

PX-20. On February 16, 2021, evidently after the deposit of sufficient funds back into the Chase

IOLA Account, the Debtor transferred the Funding Payment from the Chase IOLA Account to the escrow agent to be held in accordance with the terms of the purchase and sale agreement and amendment thereto (the "Transfer").  JPTO ¶ III.27; PX-21. After the sale closed on May 14, 2021, Mr. Barasky received the Funding Payment (and the initial deposit of $250,000), as part of the total payment amount due at closing on the sale of the Property. JPTO ¶¶ III.28-29. The transaction closed and Mr. Barasky surrendered title to the Property.

At issue in this case is the Transfer of the Funding Payment, *i.e.*, the February 16, 2021 wire transfer of $210,000 from Mr. Kossoff's firm's Chase IOLA Account to Mr. Barasky's attorney as escrow agent in connection with the purchase and sale transaction of the Property. *See* Compl., Ex. A; PX-21. The Trustee alleges that Mr. Barasky "secured a preferential payment and/or fraudulent transfer because funds were transferred from the Kossoff firm's Chase IOLA Account to Mr. Barasky, or an entity he controlled, in partial consideration for the purchase by a client of the Kossoff firm of Mr. Barasky's building" during the ninety days leading up to and including the commencement of the main Kossoff Chapter 7 case. *Barasky*, 2024 WL 665913, at *1. The Debtor was required to maintain such IOLA accounts for the benefit the firm's clients and/or its contractual counterparties and to keep such IOLA accounts segregated from the firm's own operating funds and accounts.  *See* N.Y. COMP. CODES R. & REGS. tit. 21, § 7000.8(a); JPTO ¶¶ 6-7. Mr. Kossoff was not permitted to withdraw money from the Debtors' IOLA accounts to himself; he later admitted in a May 2022 Plea Agreement with the Manhattan District Attorney that he made unlawful withdrawals from the firm's IOLA accounts. *See* JPTO ¶¶ 8-10; PX-22.

**JURISDICTION**

This Court has jurisdiction over this bankruptcy case and this adversary proceeding pursuant to 28 U.S.C. §§ 157(b), 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). The adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(F) as a proceeding to avoid and recover alleged preferences. *See Barasky*, 2024 WL 665913, at *4 ("This adversary proceeding presents claims and issues that bankruptcy courts routinely consider, namely preference and fraudulent conveyance claims, which are among the types of actions statutorily defined as 'core proceedings.'"). As discussed in note 1 *supra*, this Court follows the District Court's prior determination that this Court lacks constitutional authority to issue final orders regarding certain core claims that are the focus of this decision. *See Barasky*, 2024 WL 1892432, at *3–5. A so-called "*Stern* claim," *i.e.*, "a claim designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter," *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 30–31 (2014), may be treated by the Court like a non-core claim. "Absent consent, bankruptcy courts in non-core proceedings may only 'submit proposed findings of fact and conclusions of law,' which the district courts review *de novo*." *Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665, 671 (2015). As such, this decision constitutes this Court's proposed findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7016(b)(2) regarding Counts I through IV of the Complaint.

**LEGAL STANDARDS**

Section 547 of the Bankruptcy Code defines which transfers of a debtor's property a bankruptcy trustee may avoid as preferential. This section promotes several policies of the Code, including (1) reducing the incentives creditors have to race to the courthouse when a viable enterprise faces temporary challenges, (2) preventing failing enterprises from favoring some

creditors over others, and (3) promoting equality of distribution among similarly-situated

creditors. *See Butler v. David Shaw, Inc.*, 72 F.3d 437, 441 n.6 (4th Cir. 1996); *DeRosa v.*

*Buildex Inc. (In re F & S Cent. Mfg. Corp.)*, 53 B.R. 842, 846 (Bankr. E.D.N.Y. 1985). Subject

to possible affirmative defenses that have not been developed here, the provision empowers a

bankruptcy trustee, so long as each of following five conditions is met, to avoid any transfer of

an interest of the debtor in property:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such
> transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-- (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition,
> if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if–
> (A) the case were a case under chapter 7 of this title; (B) the transfer had not been
> made; and (C) such creditor received payment of such debt to the extent provided
> by the provisions of this title.

11 U.S.C. § 547(b). The Trustee has the burden to prove the Transfers avoidable under Section

547(b); if the Trustee does so, the Defendant has the burden to establish the elements of any

statutory defenses. *See id.* § 547(g).

**DISCUSSION**

### A.  The Payment at Issue Was "to or for the Benefit of a Creditor"

To recap the operative facts, the Buyer deposited $210,000 into the Chase IOLA Account

to be held until the sale of Mr. Barasky's Property closed, at which point the $210,000 was to be

transferred to Mr. Barasky in partial consideration of his surrender of title. Before the transaction

closed, Mr. Kossoff misappropriated essentially all of the $210,000 in funds after they were

deposited in his firm's IOLA account. After that dissipation of assets and still before the

transaction's closing, new funds were deposited into the IOLA account, such that Mr. Barasky received consideration for the sale including $210,000 from the Chase IOLA Account.

Section 547(b)(1) requires an avoidable preference payment to have been "to or for the benefit of a creditor." The facts here give rise to at least two possible "creditors" with respect to the $210,000. The first is Mr. Barasky as a seller who was contractually entitled to receive payment of the full purchase price for the Property. The second is the Buyer, who was a client of Kossoff PLLC and was entitled to have his attorney preserve the funds on deposit until they were used for an authorized purpose, *i.e.*, to close on the sale.

A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." *Id.* § 101(10)(A). The Code defines a "claim" as any:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

*Id.* § 101(5). The Code also defines a "debt" as "liability on a claim." *Id.* § 101(12).

Considering first Mr. Barasky, if the Trustee can establish that a debtor-creditor relationship existed between the Debtor and Mr. Barasky, then it will follow that the Debtor made the Funding Payment "to" a "creditor." *Id.* § 547(b). For reasons detailed immediately below and notwithstanding his protestations, Mr. Barasky was a creditor of the Debtor at the time he received the $210,000 payment at issue in this case. Specifically, Mr. Kossoff's misappropriation of the escrowed $210,000 gave Mr. Barasky a contingent legal or equitable

claim against the Debtor for payment of that amount in connection with the contracted-for payment that was due upon the sale's closing.

The Court credits Mr. Barasky's observations that the Trustee did not establish that Mr. Barasky and the Debtor previously established a business relationship or that Mr. Barasky ever employed the Debtor to provide legal services in connection with the real estate transaction involving Mr. Barasky's property. Barasky Decl. ¶¶ 7-9; Bruce Barasky's Post-Trial Submission ("Barasky Br.") ¶ 3 [ECF No. 77]. Based on these and other observations, Mr. Barasky insists that he was never a "creditor" of Debtor such that the first element of Section 547(b) liability is not met here.

The Trustee correctly responds, however, that Mr. Barasky's arguments fail to acknowledge or overcome the full extent of the definition of a "claim" under the Bankruptcy Code, and that that definition is expansive enough to give Mr. Barasky a "claim" against Debtor on account of a contingent if not fixed interest in the dissipated funds, which were contractually required to be held in escrow in the Chase IOLA Account for the benefit of Mr. Barasky until the transaction's closing. *See* Chapter 7 Trustee's Post-Trial Brief ("Trustee's Br.") ¶¶ 4-6 [ECF No. 78]. The "term 'claim' is sufficiently broad to encompass any possible right to payment." *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 302 (2d Cir. 1997). Further, "[t]he legislative history of the Bankruptcy Code indicates that Congress intended to provide the broadest possible definition of 'claim' when it enacted" Section 101(5). *Danning v. Bozek (In re Bullion Rsrv. of N. Am.)*, 836 F.2d 1214, 1219 (9th Cir. 1988) (citing the relevant House and Senate legislative reports). Rather, Mr. Barasky can be a "creditor" of and have a "claim" against Debtor whether or not he did business directly with the Debtor, employed the Debtor to provide legal services, or had his money stolen by Mr. Kossoff. As the Trustee asserts, and Mr. Barasky

has not rebutted, Mr. Barasky had a contingent right to payment by the Debtor and/or an

equitable remedy as against Debtor in the event that Debtor failed to render the contractually

required payment of the $210,000. No more is required.

Specifically, Mr. Barasky would have held a contingent "claim" for the transfer of the

deposits from Debtor's Chase IOLA Account to the escrow agent to Mr. Barasky upon the

closing of the sale. *See* 11 U.S.C. § 101(5) (a "claim" is any "right to payment" including a

contingent right to payment); Affidavit of Liwu Hong ¶¶ 9-14, Declaration of Ronald Howard,

Ex. A.1 [ECF No. 78-4] (stating that the Debtor would remit the Transfer of the Funding

Payment to the escrow agent upon entry of the amendment of the purchase and sale agreement);

PX-20 (First Amendment to Contract). When the Buyer transferred the Funding Payment in

November 2020 pursuant to the renegotiated purchase and sale agreement to be held in trust in

the Debtor's Chase IOLA Account, *see* PX-19, no debtor-creditor relationship between the

Debtor and Mr. Barasky had yet been created. Such a relationship was created, however, when

Mr. Kossoff withdrew funds from the Chase IOLA Account and left it with a daily ending

balance of $5,484.62 on January 5, 2021, *see* PX-6, because the dissipation of escrowed funds

gave rise to a contingent interest of Mr. Barasky in Debtor's restoring those funds to the Chase

IOLA Account even though the Buyer as grantor retained legal title to those funds so long as

they were properly held in the Chase IOLA Account. Mr. Kossoff was required by the purchase

and sale agreement to hold the Funding Payment in trust for the benefit of Mr. Barasky and the

Buyer; his failure to do so gave rise to (1) a contingent interest in the restoration of the Funding

Payment to the Chase IOLA Account under the terms of the purchase and sale agreement

because the sale of the Property had not yet closed and (2) a fixed interest in the restoration of

the Funding Payment to the Chase IOLA Account after Mr. Barasky and the Buyer entered into

an amendment of the purchase and sale agreement. *See Alarmex Holdings, LLC v. Gowan (In re Dreier LLP)*, 527 B.R. 126, 133 (S.D.N.Y. 2014) (The deposit of funds in escrow creates "in the grantee [*i.e.*, Mr. Barasky as seller] such an equitable interest in the property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him.") (emphasis added; internal quotations omitted) (quoting *Hassett v. Blue Cross & Blue Shield of Greater N.Y. (In re O.P.M. Leasing Servs., Inc.)*, 46 B.R. 661, 667 (Bankr. S.D.N.Y. 1985)); *see also Big Sky Motors, Ltd. v. Bailey*, No. 299CV270B, 2000 WL 33672946, at \*6 (D. Utah Feb. 4, 2000), *aff'd sub nom. In re Ogden*, 314 F.3d 1190 (10th Cir. 2002) (Funds transferred to an escrow account replenished by funds fraudulently obtained from other investors diminished the debtor's estate and gave rise to claims of the estate's unsecured creditors and the transferee of the preferential transfer). And, as discussed *infra* in section F, Mr. Barasky's inability to trace the funds constituting the Funding Payment in the Debtor's accounts leaves him unable to rebut the presumption that Mr. Kossoff's replenishment of the Chase IOLA Account of funds before making the Transfer to the escrow agent pursuant to the amendment was made with the funds of third parties. *See* Flynn Decl. ¶ 30. ("[Mr.] Kossoff, the Debtor's sole managing member, improperly used the Debtor's IOLA Accounts as if they were common depositories of not only Restricted Funds, but also his personal funds, loan proceeds, and other types of funds.").

At risk of repetition, this legal conclusion regarding the circumstances here – whether the intended recipient of escrowed funds owned by a grantor has a claim against the entity that held those funds upon the funds' dissipation – is informed by the comprehensive sweep of the Code's definition of "claim" and, by extension, "creditor." *See In re Motors Liquidation Co.*, 598 B.R. 744, 753 (Bankr. S.D.N.Y. 2019) ("By defining "claim" in such a way, Congress intended that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt

with in the bankruptcy case,' thus affording debtors 'the broadest possible relief in the bankruptcy court.'") (quoting H.R. Rep. 95-595 (1978)); *In re Drexel Burnham Lambert Grp. Inc.*, 148 B.R. 982, 987 (Bankr. S.D.N.Y. 1992) ("[A] contingent claim is by definition a claim which has not yet accrued and which is dependent upon some future event that may never happen."); *In re Caldor, Inc.-NY*, 240 B.R. 180, 192 (Bankr. S.D.N.Y. 1999) (A "creditor need not have a cause of action that is ripe for suit outside of bankruptcy in order for it to have a pre-petition claim for purposes of the Code."). After Mr. Barasky and the Buyer entered into the amendment of the purchase and sale agreement on February 8, 2021, which obligated the Buyer to remit the Funding Payment and initial deposit to the escrow agent, *see* PX-20, the contingent, conditional obligation to have the Funding Payment restored to the Chase IOLA Account became a fixed obligation. Put another way, Mr. Barasky was the grantee in the contemplated transaction, and, as such, he had an equitable interest in the Funding Payment held in the Chase IOLA Account, an interest that continued when Mr. Kossoff withdrew most of the Funding Payment and later replenished the Chase IOLA Account with the funds of third parties. *See* Flynn Decl. ¶ 30; Trial Tr. 57:13-17, May 7, 2025. As previously discussed, the Bankruptcy Code's definition of "claim" is broad enough to encompass Mr. Barasky's interest in the Funding Payment, whether it arose when the claim was contingent or fixed. *See Dreier* and *Big Sky Motors*, *supra*; *cf. Bullion Rsrv. of N. Am.*, 836 F.2d at 1218 (The participant's "right to demand bullion from [the debtor]" constituted an unmatured "claim" under the Bankruptcy Code.); *Wootton v. Barge (In re Cohen)*, 875 F.2d 508, 509 (5th Cir. 1989) (noting it does not matter what kinds of claims the preferential transactions created because "they are nevertheless claims as defined by the Bankruptcy Code"); *Matrix Cap. Bank*, 315 B.R. at 280 (Creditor "Matrix would have held contingent 'claims' for the return of the funds" after the underlying mortgages

failed to close under the terms of the agreement at issue). Thus, the Trustee has established that Mr. Barasky is a "creditor" of the Debtor.

Second, the "creditor" element of Section 547(b) is also and independently satisfied because the payment was, if not "to" a creditor, surely "for the benefit of" a creditor in the person of the Buyer. Mr. Barasky has not contested that the Buyer was a "creditor" of Debtor, at least once the escrowed $210,000 was misappropriated. And the transaction's closing with funds restored to the IOLA accountant after Mr. Kossoff's initial misappropriation self-evidently was "for the benefit of" the buyer in that the payment enabled the transaction to close and the Buyer to obtain title to the Property. Indeed, although the Court has not found (or been cited to) prior case law dealing with misappropriated escrowed funds that had been intended to be used solely to close on a real estate transaction, courts considering analogous situations have concluded that the depositor of misappropriated funds had a claim and was a creditor where the party holding the funds commingled or misappropriated the funds rather than preserving them for the contractually intended use. *See, e.g.*, *Bullion Rsrv. of N. Am.*, 836 F.2d at 1218 (When the debtor commingled funds that it received from program participants to purchase bullion and used the funds to instead pay for various expenses, "[the participant] became a creditor when he transferred funds to [the debtor] for the purchase of bullion. At that moment, [the participant] accrued a right to demand bullion from [the debtor]. This right, although unmatured, constituted a 'claim' under the Bankruptcy Code."); *Barge*, 875 F.2d at 509 ("Regardless whether [the investor's] transactions with [the debtor] create claims in the nature of contract . . . or in fraud, they are nevertheless claims as defined by the Bankruptcy Code . . . [the debtor's] repayment of funds to [the investor] up to the $2.3 million that [the investor] invested with [the debtor] were for or on account of an antecedent debt."); *Matrix Cap. Bank*, 315 B.R. at 280 (irrespective of

how defendant Matrix characterizes itself, it advanced funds to the debtors and was owed

corresponding "debts").

### B. The Funding Payment was on Account of Antecedent Debt Owed by the Debtor Before the Transfer was Made

The second subsection of Section 547(b) requires that the preference payment sought to

be avoided was "for or on account of an antecedent debt owed by the debtor." 11 U.S.C. §

547(b)(2). This subsection is easily dealt with here. Kossoff PLLC was contractually required to

hold the Funding Payment in trust for the benefit of Mr. Barasky and for the Buyer, and to pay

the $210,000 to Mr. Barasky via the escrow agent upon the closing of the Property sale. The

obligation was contingent until the point at which the payment became required to be made as

part of the closing. Having concluded that claims were held both by Mr. Barasky (through a

contingent, equitable or legal right to receive payment from Debtor) and the Buyer (by having

conveyed funds to be held by Debtor pending closing, at which point the Debtor owed the Buyer

a contractual duty to convey the funds to Mr. Barasky), it necessarily follows that Debtor's

payment was "for or on account of an antecedent debt," meaning either or both of those

obligations of Debtor.

Applicable law reinforces this conclusion. The Bankruptcy Code does not define the

phrase "antecedent debt." *Matrix Cap. Bank*, 315 B.R. at 277–78. "Debt," as previously

discussed, is defined by the Code as "liability on a claim." 11 U.S.C. § 101(12). According to

the Supreme Court, "[t]his definition [of debt] reveals Congress' intent that the meanings of

'debt' and 'claim' be coextensive." *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558

(1990). For purposes of a voidable preference action under Section 547(b)(2), an "antecedent

debt" is "a debt which is incurred prior to the relevant transfer." *Pereira v. Lehigh Sav. Bank,*

*SLA (In re Artha Mgmt., Inc.)*, 174 B.R. 671, 678 (Bankr. S.D.N.Y. 1994) (citing *In re*

*Intercontinental Publ'ns., Inc.*, 131 B.R. 544, 549 (Bankr. D. Conn. 1991)); *see also In re Enron Corp.*, 357 B.R. 32, 39 (Bankr. S.D.N.Y. 2006); *Peltz v. New Age Consulting Servs., Inc.*, 279 B.R. 99, 102 (Bankr. D. Del. 2002). And "[a] debt is incurred, for purposes of 11 U.S.C. § 547(b)(2), when it arises and not when payment becomes due." *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 347 (Bankr. S.D.N.Y. 1999) (citing *Futoran v. Rush (In re Futoran)*, 76 F.3d 265, 267 (9th Cir. 1996)).

On this point, Mr. Barasky simply repeats his argument that he is not a creditor of the Debtor and therefore cannot have been owed an antecedent debt; he urges instead that the Trustee was unable to produce at trial "a single document evidencing an antecedent debt." Barasky Br. ¶ 5. This argument fails. First, whether Mr. Barasky was or was not himself a creditor of Debtor, the payment was "on account of and antecedent debt owed by the Debtor" because (as Mr. Barasky concedes yet fails to address) Debtor owed a debt to the Buyer, even if not upon assuming the obligation to hold funds and deliver them at closing, then surely upon Mr. Kossoff's alienation of the funds held by Kossoff PLLC, which gave the firm a legal obligation to return or restore those funds. The payment made at closing was in satisfaction of those obligations owed by Debtor. Put in statutory terms, it was "for or on account of" Debtor's debt to the Buyer.

The same payment also was "for or on account of" a debt that Debtor owed Mr. Barasky. As previously explained, Mr. Barasky *was* a creditor of the Debtor in that Mr. Barasky had a contingent claim against Debtor until and unless Debtor discharged its obligation to deliver the $210,000 as part of the closing payments. Mr. Barasky was owed an antecedent debt by the Debtor (or duty of Debtor to restore the funds) that arose no later than the time that Mr. Kossoff plundered the Funding Payment from the Chase IOLA Account. *See Dreier LLP*, 527 B.R. at

133; *Futoran*, 76 F.3d at 267 (an "unmatured" obligation was "owed" and considered an antecedent debt); *Piazza v. Pac. Mar. Indus. Corp. (In re George G. Sharp, Inc.)*, No. 20-10590 (MEW), 2022 WL 1714178, at *17 (Bankr. S.D.N.Y. May 25, 2022) (The inquiry of what constitutes an antecedent debt is whether the recipient of the preference had accrued legal rights and "was 'owed' before the payments were made."). As a result of this "claim," the Debtor owed Mr. Barasky an "antecedent debt" under Section 101(12).

### C. The Transfer of the Funding Payment Occurred Within the 90 Days Before the Petition Date

The Debtor made the Transfer of the Funding Payment on February 16, 2021. *See* PX-21. Creditors of the Debtor filed their involuntary petition for relief under Chapter 7 less than 90 days later, on April 13, 2021.

### D. The Insolvency of the Debtor

Section 547(f) of the Bankruptcy Code presumes a debtor insolvent "on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). "Where the transferee offers no evidence regarding solvency, the trustee may rely upon the statutory presumption." *Sapir v. Keener Lumber Co. (In re Ajayem Lumber Corp.)*, 143 B.R. 347, 351 (Bankr. S.D.N.Y. 1992). The Defendant offers no evidence of Debtor's solvency at the time of the Transfer and does not otherwise challenge this presumption. The Trustee thus has met his burden on this element.

### E. The Defendant Received More Than It Would Have in a Hypothetical Liquidation of the Debtor

The Court next considers whether the Transfer of the Funding Payment caused Mr. Barasky to receive more than he would have received in a Chapter 7 liquidation if the Transfer had not been made. 11 U.S.C. § 547(b)(5) (requiring that the payment at issue be one "that

enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.").

"To satisfy [Section] 547(b)(5), the plaintiff must prove that the transferee received more as a result of the preference than if the preference was never paid, and instead, the transferee received a distribution on its claim in a hypothetical chapter 7 case." *Savage & Assocs. v. Mandl (In re Teligent Inc.),* 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008). "As a practical matter, this element is satisfied whenever the plaintiff shows that the creditor would receive less than 100% in a hypothetical chapter 7 distribution." *Id.* The Ninth Circuit explained the "Hypothetical Chapter 7 Liquidation Test" as follows:

> [Whether a creditor has received a preference is to be determined,] not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results.

*Elliott v. Frontier Props. (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1421 (9th Cir. 1986) (quoting *Palmer Clay Prods. Co. v. Brown,* 297 U.S. 227, 229 (1936) (internal quotations omitted)).

Had the Transfer not been made and had Mr. Barasky been obliged to seek compensation in Debtor's Chapter 7 case, Mr. Barasky would not have received as much as he received through the Transfers. Mr. Barasky received the full amount of the Funding Payment, while the Trustee has presented unrebutted evidence that creditors in the bankruptcy case will receive less than full payment on account of their claims. *See* PX-20 ¶¶ 2-3; Def's Decl. ¶ 1-5; Trial Tr. 63:23:64:4, May 7, 2025 (noting that the estate is currently administratively insolvent and creditors will not receive a hundred cents on the dollar). Mr. Barasky's only argument in

18

opposition here is his already-rejected contention that he was not a creditor of the Debtor. It thus

is inescapable that Mr. Barasky received more from the Transfer of the Funding Payment that he

would have had be not received the Transfer and instead been forced to seek compensation as a

creditor in a Chapter 7 liquidation. *See In re W. Integrated Networks, LLC*, No. BAP. CO–06–

021, BANKR. 02–13043–EEB, ADV. 04–1065–MER, 2006 WL 2460702, at *3 (B.A.P. 10th

Cir. Aug. 25, 2006) (observing that where total claims exceed estate assets, claims will not be

paid in full).

Mr. Barasky's situation is sympathetic. He parted with real property solely because he

received full payment in full of the contractually agreed price. Had the contract price not been

paid, he could and would likely either have refused to close and convey title or sued to enforce

specific performance of the transaction. Now the operation of Section 547(b) will deprive him of

the benefit of his bargain to the tune of $210,000.

But Mr. Barasky has neither explained nor proven that the facts and law here do not

compel this result, and the plain language of each subsection of Section 547(b) is present here, as

the preceding discussion demonstrates. Specifically as to Section 547(b)(5), the Court is to assess

what would have happened if (A) the case were under Chapter 7 (this one is), "(B) the transfer

had not been made; and (C) such creditor received payment of such debt to the extent provided

by the provisions of this title." This statutory command does not invite or call for analysis of

counterfactual scenarios of how the parties would have acted in the first place if the payment

were not made; it merely asks what would have happened in a later Chapter 7 distribution if the

payment had not been made. Preference action defendants (at least non-insiders) often are

sympathetic, but the Code's clear command requires the avoidance of the preferential payments

they received. This is in service of core bankruptcy concepts, at heart, the equal treatment of

like-situated creditors, to avoid the injustice that a fortunate few would otherwise emerge fully or disproportionately paid while others collect less than they would have if all similarly situated creditors were treated the same. *See Begier*, 496 U.S. at 58 ("Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property. Section 547(b) furthers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy. This mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy"); *see also, e.g.*, *AppOnLine.com*, 315 B.R. at 271.

Meanwhile, Mr. Barasky offered no case in chief at all, and, by failing to respond at all (much less timely) to the draft joint pretrial order sent to his counsel by the Trustee, he abandoned any possible affirmative defenses.

### F.  The Transfer Was an Interest of the Debtor in Property

Lastly, the Court examines whether the Transfer of the Funding Payment was a transfer of an interest of the Debtor in property, as is required by text of Section 547(b) that precedes and introduces that section's five numbered subsections ("[T]he trustee may . . . avoid any transfer of an interest of the debtor in property."). Bankruptcy law determines whether an interest is "property of the estate," *In re Prudential Lines Inc.*, 928 F.2d 565, 569 (2d Cir. 1991), and the Code provides that such interests include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see also Begier*, 496 U.S. at 59–60 (courts turn to Section 541(a) to determine the scope of property interests recoverable under Section 547, among others).

Had Mr. Kossoff not misappropriated funds, the outcome would be different. Under New York law, a grantor of funds placed in escrow (*i.e.*, here, the Buyer, *see* PX-19 (wire transfer receipt documenting Funding Payment from Buyer to the Chase IOLA Account); PX-21 (confirmation of wire transfer from Chase IOLA Account to escrow agent) retains legal title to them and the grantee to such funds (*i.e.*, here, Mr. Barasky as seller) possesses equitable title or an equitable interest. *See Dreier LLP*, 527 B.R. at 133–34 (citing *O.P.M. Leasing Servs.*, 46 B.R. at 667). An escrow agent is a trustee that holds funds in trust for another and holds neither legal nor equitable title in those funds. *See Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002) (citing *Oppenheim v. Simon*, 394 N.Y.S.2d 500, 502 (N.Y. App. Div. (3d Dept.) 1977)). Under bankruptcy law, the same principle holds – a debtor "does not own an equitable interest in property he holds in trust for another." *Begier*, 496 U.S. at 59; *see also McHale v. Boulder Cap. LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 47, 64 n.4 (Bankr. S.D.N.Y. 2010) ("The Court agrees that funds held in trust by a debtor for the benefit of a third party are not funds of the estate.").

But in bankruptcy cases involving commingled trust property, a trust account consisting of commingled trust and personal funds becomes an interest of the Debtor in property. *See Bullion Rsrv. of N. Am.*, 836 F.2d at 1217 (funds in commingled account that could have been used to pay other creditors "presumptively constitutes property of the debtor's estate"). In a bankruptcy case involving commingled funds, to overcome the presumption that commingled funds are estate property, the transferee "bears the burden of tracing the alleged trust property 'specifically and directly' back to the illegal transfers giving rise to the trust." *In re Advent Mgmt. Corp.*, 104 F.3d 293, 296 (9th Cir. 1997); *see also Schick*, 234 B.R. at 343–44 ("The burden then shifts to the defendant (1) to show that the debtor held only legal title and (2) to

21

trace the equitable owner's interest to the specific property at issue."); *In re E.D.B. Constr. Corp.*, No. 11–76129–REG, 2013 WL 6183849, at *4 (Bankr. E.D.N.Y. Nov. 26, 2013) ("[T]he funds in a commingled account may be used to pay unsecured creditors unless a trust beneficiary can trace a superior right to those funds. Therefore, the funds in a commingled account that could have been used to pay other creditors presumptively constitute[ ] property of the estate."); 5 *Collier on Bankruptcy* ¶ 547.03[3] ("[W]hen the property or proceeds involved cannot be traced or identified, the injured party becomes a creditor of the debtor to the extent of that property, and the debtor's payment of or giving of security for the creditor's claim will constitute a preference if the other elements under the Code are satisfied.").

Mr. Barasky argues that the Trustee has proved only that (a) the Debtor' estate held bare legal title to the Chase IOLA Account, (b) the Chase IOLA Account was a trust account, and (c) the funds contained therein were the property of the third parties, not the Debtor's estate. Barasky Br. ¶¶ 11-14. The Trustee and Mr. Barasky agree that the Debtor held legal title to the Chase IOLA Account and that the Debtor does not own funds traceable to and held in trust for third parties. *See* PX-4 (bank statement of "KOSSOFF, PLLC, ATTORNEY TRUST ACCOUNT IOLA"); Trial Tr. 62:14-17, May 7, 2025 (Debtor held legal title to Chase IOLA Account).

But Mr. Barasky is not correct that these considerations require judgment in his favor. Barasky Br. ¶¶ 13-14 (citing Trial Tr. 53:11-16, May 7, 2025). Mr. Barasky's contentions disregard the effect of the commingling of assets that Mr. Kossoff and the Debtor indisputably committed; in fact, Mr. Barasky acknowledges as the evidence shows that Trustee established that the Debtor commingled the Chase IOLA Account with non-trust funds. Barasky Br. ¶ 1 (citing Flynn Decl. ¶ 30); *see also* Trial Tr. 57:13-17, May 7, 2025 (The Trustee's witness,

Michael Flynn, testified that the Debtor's Chase IOLA Account included "potentially personal funds, loan proceeds, and other types of funds" in it). Mr. Barasky cannot overcome the principle that "[t]he funds in a commingled account maintained in the debtor's name may be used to pay his unsecured creditors unless a beneficiary can trace his or her superior right in the funds." *Schick*, 234 B.R. at 343. That is the situation here, and it defeats Mr. Barasky's position. *See id.* at 345 ("New York law does not grant a trust creditor a preference over general creditors merely because he is a trust creditor.") (citing *In re Hicks*, 63 N.E. 276, 277 (N.Y. 1902)). The Trustee has established that more than $204,000 of the $210,000 was dissipated and replaced with unknown other funds that have not been shown to have any tie to the Buyer or Mr. Barasky. And there has been no evidence permitting tracing of the source of any of the funds that ended up in the Chase IOLA Account after funds were misappropriated or that were used to pay Mr. Barasky.

Accordingly, the Trustee has sustained his burden of proving that the Funding Payment made from the commingled Chase IOLA Account involved the transfer of the Debtor's interests in property that diminished the estate.

### G.  The Court Disallows Defendant's Claims

The Trustee has established that the Transfers count as avoidable preferences under Section 547(b) and that Mr. Barasky has no defenses that protect the Transfer. Accordingly, under Section 550 of the Bankruptcy Code, the Trustee may recover the value of the Transfers from the Defendant. 11 U.S.C. § 550(a). For the same reason, because no party has disputed that the Mr. Barasky also has not "paid the amount[ ] or turned over any such property[ ] for which [the Defendant] is liable" under 11 U.S.C. § 550, *see id.* § 502(d), the Court disallows the Defendant's claims against the Debtor.

23

### H.  Amendment of the Complaint Was Not Required

Finally, the Court rejects Mr. Barasky's assertion that the Trustee failed to properly

amend his Complaint, and instead impermissibly purported to do so solely through six sections

of the Joint Pretrial Order. Barasky Br. ¶¶ 15-17 (citing JPTO ¶¶ IV.7, IV.8, IV.11, IV.12, IV.13,

IV.16).

Mr. Barasky misstates the pertinent law, which authorizes the use of pre-trial orders to

define the issues to be tried and, effectively, to amend the pleadings. According to Federal Rule

of Civil Procedure 16(e), the final pre-trial order supersedes all prior pleadings and "controls the

subsequent course of the action." FED. R. CIV. P. 16(e) (made applicable in this proceeding by

FED. R. BANKR. P. 7016). The Supreme Court confirmed and enforced the rule's plain meaning

to that effect in *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (citing *Wilson v.*

*Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[T]he pretrial order is the controlling document

for trial.") (internal quotations omitted)). The Trustee was thus not required to separately move

for leave to amend the Complaint (or amend it earlier as of right), and the allegations set forth in

the Joint Pretrial Order are sufficient to support the evidence presented and the relief sought.

Moreover, here, Mr. Barasky has waived any right to oppose this procedure by failing to

object or even to participate in development of the pre-trial order that defined the claims and

issues to be tried. Mr. Barasky had a series of attorneys during the case, for which the Court does

not fault him, but the fact remains that Mr. Barasky was represented, the case's deadlines were

long established and consented to by counsel, and Mr. Barasky nevertheless failed to object or

even to propound defenses to be included in the pre-trial order, and, thus, to be tried. *See, e.g.*,

Trial Tr. 81:4-11, May 7, 2025 (the Court observing that Mr. Barasky "failed to engage in the

pre-trial motion preparation process at all . . . [the Trustee] honored that requirement and has

spelled out their contentions thoroughly and clearly for all to see. And [Mr. Barasky] simply

didn't do so."). During the pre-trial conference, the Court determined that the "pre-trial

submissions [were] complete," *see* Hr. Tr. 4:17-18, Apr. 14, 2025 [ECF No. 80], and that the

discovery record was closed, *see id.* 9:13-14 (statement of Mr. Barasky's previous counsel

consenting to closing the record). Mr. Barasky thus never objected to proceeding on claims as

stated in the pre-trial order. Thus, Mr. Barasky's objection to proceeding on the claims as set

forth in the pre-trial order has been waived, and as stated above, even if not waived, it lacks

merit.

### CONCLUSION

For the reasons stated above, this Court recommends entry of a final judgment that (1)

avoids the Transfer pursuant to section 547(b) of the Bankruptcy Code; (2) directs the Defendant

pursuant to section 550(a) of the Bankruptcy Code to pay the Trustee $210,000 plus interest (as

described below) and costs; (3) awards pre-judgment interest at the maximum legal rate running

from the date of the Transfer to the date of judgment with respect to the Complaint (the

"Judgment"); (4) awards post-judgment interest at the maximum legal rate running from the date

of the Judgment until the date the Judgment is paid in full; and (5) disallows any claims of

Defendant pursuant to section 502(d) of the Bankruptcy Code. The parties are directed to meet

and confer regarding whether any further order of this Court is required to effectuate this

decision or for any other reason. The parties are to file a joint letter by July 25 stating whether

they believe any further order of this Court is required, and, if so, proposing an appropriate form

of order. If the parties are unable to reach agreement they may file separate submissions.

**IT IS SO ORDERED.**

Dated: New York, New York                      *s/ David S. Jones*
      July 18, 2025                      United States Bankruptcy Judge